IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **PATRICK MCKEAN**, *et al.*,      **Plaintiffs,** | ) ) ) |
| v. | ) ) )   **CIVIL ACTION: 1:22-00289-KD-N** |
| **CITY OF MOBILE,**      **Defendant.** | ) ) ) |

## ORDER

This matter is before the Court on the parties' Joint Motion to Approve FLSA Settlement (Doc. 34); the parties' proposed Settlement Agreement and Release (Doc. 34-1); and Plaintiff's Attorney's Invoices (Doc 34-2).

**I.    Background**

On July 21, 2022, Plaintiffs Patrick McKean, Joshua Evans, and William Byrd initiated this action against the Defendant City of Mobile (the City) pursuant to the *Fair Labor Standards Act* (FLSA), 29 U.S.C. § 201 *et seq.*, alleging that the City failed to pay them overtime for three (3) years while they were employed as police officers in the City's Police Department K-9 unit (canine handlers). (Doc. 1). Specifically, Plaintiffs allege that during -- and for more than -- a period of three (3) years, the City willfully violated the FLSA by:

> ... failing to keep accurate records showing all the time it permitted or required Plaintiffs to work, which resulted in the denial of compensation, either at a regular rate or an overtime premium rate for all time worked in excess of forty (40) hours in a workweek, as required by the FLSA.
>
> ... by permitting or requiring Plaintiffs to perform work in excess of forty (40) hours a week without paying them the proper overtime compensation for this time.

(Doc. 1 at 7-8). Plaintiffs allege that they were required to spend time caring for the dogs in the K-9 unit to keep them prepared and ready to work at any moment but were not paid accordingly:

> [o]n days Plaintiffs are off duty, they are paid an hour of overtime for the time they spend taking care of the dogs. On days Plaintiffs work, they are paid nothing for their off-duty time caring for the dogs.
>
> ***
>
> The off-duty time spent caring for the dogs is an integral and indispensable part of Plaintiffs' principal activities.
>
> There is no agreement between Plaintiffs and Defendant as to the amount of compensable time Plaintiffs would receive for caring for the dogs while off duty.
>
> Defendant did not limit or specify the amount of time Plaintiffs were to spend caring for the dogs while off duty, but Defendant expects Plaintiffs to appropriately care for the dogs every day and to have them fit and ready for duty. Defendant does require Plaintiffs to receive and provide training on caring for and maintaining the dogs for service, including while the dogs are at the Plaintiffs' homes.
>
> Defendant is aware that Plaintiffs are performing work (i.e. caring for the dogs) while off-duty, yet Defendant willfully refuses to pay Plaintiffs for this compensable time. Plaintiffs frequently complained to their commanding officers that they were not being compensated for their time caring for the dogs on duty days. Specifically, on behalf of the entire K-9 Unit, McKean complained to Captain William "Harvey" Reed, Captain Melvin Jones, and Captain James Cunningham ... Additionally, Captain Reed notified then- Police Chief Lawrence Battiste as early as June of 2018 with the Plaintiffs' concerns ... Defendant has been aware for over five years that Plaintiffs are not being paid for time that they are spent doing their job duties and yet has repeatedly and continuously refused to pay them for that time.
>
> Defendant's refusal to pay Plaintiffs for the time spent caring for the dogs while off duty is willful.
>
> Defendant willfully violated the FLSA by failing to pay Plaintiffs an overtime rate of pay for work they performed in excess of forty (40) hours a week spent caring for the Defendant's service animals.

(Doc. 1 at 6-7).

As relief, Plaintiffs request that this Court issue a declaratory judgment that the employment policies, practices, procedures, conditions and customs of Defendant are violative of the rights of Plaintiffs as secured by the FLSA; award damages from the City for Plaintiffs, including compensation for unrecorded overtime work plus interest, post-judgment interest, and liquidated and exemplary damages, in an amount to be proven at trial; award all costs of litigation,

including expert fees and attorneys' fees and costs; and award such other legal and equitable relief as the Court deems proper. (Doc. 1 at 8).

## II. Governing Law

In <u>Lynn's Food Stores, Inc. v. United States ex rel. Dep't of Labor, Emp. Standards Admin., Wage & Hour Div.</u>, 679 F.2d 1350, 1352-1355 (11th Cir. 1982), the Eleventh Circuit recognized two (2) methods for settlement of claims brought pursuant to the FLSA: supervision by the Secretary of Labor; or court approval in a private action where a plaintiff is represented by counsel. As to the latter, which applies here, the parties may compromise and settle the FLSA claims but only with Court approval of the settlement agreement.

Specifically, courts must determine whether the settlement is a "fair and reasonable resolution of a bona fide dispute" of the FLSA claims. <u>Lynn's Food Stores</u>, 679 F.2d at 1352-1355; <u>Dees v. Hydradry, Inc.</u>, 706 F.Supp.2d 1227, 1238-1239 (M.D. Fla. 2010). Evaluating the fairness of an FLSA compromise includes an assessment of: 1) the existence of fraud or collusion behind the settlement; 2) the complexity, expense and likely duration of the litigation; 3) the stage of the proceedings and amount of discovery completed; 4) the probability of plaintiff's success on the merits; 5) the range of possible recovery; and 6) the opinions of the counsel. <u>Dees</u>, 706 F.Supp.2d at 1241. Additionally, the FLSA "contemplates that 'the wronged employee should receive his full wages plus the penalty without incurring any expense for legal fees or costs.'" <u>Silva v. Miller</u>, 307 Fed. Appx. 349, 351 (11th Cir. 2009). "When a settlement agreement includes....attorney's fees and costs, the 'FLSA requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement.'" <u>Id</u>. Moreover, 29 U.S.C. § 216(b) provides that "...[a]ny employer who violates…shall be liable to the employee….affected in the

amount of….their unpaid overtime compensation….and in an additional equal amount as liquidated damages...The court…shall, in addition to any judgment awarded to the plaintiff…allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."  Thus, "in any case where a plaintiff agrees to accept less than his full FLSA wages and liquidated damages, he has compromised his claim within the meaning of *Lynn's Food Stores*."  Vergara v. Delicias Bakery & Restaurant, Inc., 2012 WL 2191299, *1 (M.D. Fla. May 31, 2012).

### III.     Bona Fide Dispute and Fair and Reasonable Resolution

Courts may approve a compromise resolving a bona fide dispute over FLSA provisions where a plaintiff's compromise of his claims (the settlement agreement) is a fair and reasonable resolution of that dispute. Lynn's Food, 679 F.2d at 1352-1355; Dees, 706 F.Supp.2d at 1238-1239. "[T]he parties requesting review of an FLSA compromise must provide enough information for the court to examine the bona fides of the dispute." Dees, 706 F.Supp.2d at 1241.

### A.     Bona Fide Dispute

Section 216(b) of the FLSA provides that "... [a]ny employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages ..." 29 U.S.C. § 216(b). Section 207 is captioned "Maximum Hours" and paragraph (a)(1) states as follows:

> Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1).

Plaintiffs initiated this lawsuit against Defendant seeking to recover monetary damages, liquidated and exemplary damages, interest, litigation costs, and reasonable attorneys' fees pursuant to the FLSA. (Doc. 1 at 1, 8). Specifically, Plaintiffs allege that during the time they worked for Defendant, they were not properly compensated with an overtime premium for hours worked over 40 each week, in violation of their FLSA rights. Plaintiffs claim that they regularly worked hours that went uncompensated while working for Defendant; particularly, Plaintiffs allege that they would maintain, while off duty, the Police Department's K-9 Unit in their role as a police officer canine handler. Plaintiffs allege, therefore, that the compensation they have received throughout their employment is inadequate overtime pay. Defendant denies these claims and argues that Plaintiffs were at all times compensated properly.

Based on a review of the docket, the present Motion (Doc. 34) and proposed Settlement Agreement and Release (Doc. 34-1), the Court finds that a bona fide dispute exists as to whether Plaintiffs were paid overtime for all hours worked over 40 as required by 29 U.S.C. §207 (a).

**B.     Fair and Reasonable Resolution**

Lynn's Food requires this Court to determine whether Plaintiffs' compromise of their claims is fair and reasonable. Lynn's Food, 679 F.2d at 1352-1355; Dees, 706 F.Supp.2d at 1238-1239. A general framework for evaluating the fairness of an FLSA compromise includes: 1) the existence of fraud or collusion behind the settlement; 2) the complexity, expense, and likely duration of the litigation; 3) the stage of the proceedings and the amount of discovery completed; 4) the probability of plaintiff's success on the merits; 5) the range of possible recovery; and 6) the opinions of the counsel. Dees, 706 F.Supp.2d at 1241. The parties agree that the terms of settlement are fair and reasonable. (Doc. 18 at 2). Per Lynn Food's however, the Court must still assess same.

1. **<u>Compromise of the FLSA Claims</u>**

Under the FLSA, "[a]ny employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages[.]" 29 U.S.C. § 216(b).

The parties agree that both sides compromised their positions. (Doc. 34 at 10). According to the parties, each plaintiff's settlement amount provides for full compensation of unpaid overtime that each plaintiff claimed, and an additional equal amount of liquidated damages. (Doc. 34 at 7). Specifically, the parties assert that "Defendant corrected the overtime rates forming the basis of Plaintiffs' initial valuation of their claims, and the parties agreed to the Settlement" as set out in the Settlement Agreement. (Doc. 34 at 4). This calculation gives each plaintiff proper overtime compensation required by law and doubles it to include liquidated damages. (Doc. 34 at 4-5). Further, the parties assert that the "Settlement Agreement is a fair and reasonable compromise" of the dispute. (Doc. 34 at 10).

2. **<u>Scope and Terms of the Proposed Settlement Agreement</u>**

The assessment of fairness is guided by prevailing FLSA case law and a review of the specific terms of the parties' proposed settlement agreement. Here, the settlement terms contain disfavored provisions that encumber approval of any FLSA settlement agreement.

First, the proposed waiver and release provision (Doc. 34-1, subpart 1(a)) is pervasive (not just limited to FLSA claims). Specifically, proposed subpart 1(a) states that:

> 1. Plaintiffs:
>
>    a. Hereby waive and release every known or unknown action, cause of action, suit, or claim, asserted or unasserted, that Plaintiffs may have against Released Parties under the Fair Labor Standards Act (29 U.S.C. § 201, et seq.), and every federal, state, and local statutory or common law theory under which a suit or action can be brought, with the exception that the parties may pursue their rights to enforce this Agreement;

Doc. 34-1 at 2.

The foregoing proposed settlement term exceeds the bounds of FLSA claims and provides for a general release from liability unconnected to the FLSA -- *i.e.*, to "release" "every federal, state, and local statutory or common law theory under which a suit or action can be brought[,]" against the Defendant. As such, this provision covers a "dizzying array of claims, known and unknown[ ]" which "courts have found to be an anathema to the FLSA." Moreno v. Regions Bank, 729 F. Supp. 2d 1346, 1350-1352 (M.D. Fla. 2010) (an employer may not "use an FLSA claim (a matter arising from the employer's failing to comply with the FLSA) to leverage a release from liability unconnected to the FLSA[ ]"); Robinson v. Waste Pro of Fla., Inc., 2022 WL 17476666, *3 (M.D. Fla. Nov. 9, 2022), *Report & Recommendation*. "Such general or pervasive releases are frequently viewed as 'side deal[s]' in which the employer extracts a gratuitous (although usually valueless) release of all claims in exchange for money unconditionally owed to the employee[ ]' ... [b]ecuase general releases 'confer[] an uncompensated, unevaluated, and unfair benefit on the employer,' they often do not survive judicial scrutiny." Robinson, 2022 WL 17476666 at *3.

Many courts in the Eleventh Circuit conclude that such broad releases are unfair and unreasonable. For example, as summarized in Moreno, 729 F.Supp.2d at 1351:

> An employee who executes a broad release effectively gambles, exchanging unknown rights for a few hundred or a few thousand dollars to which he is otherwise unconditionally entitled. In effect, the employer requests a pervasive release in order to transfer to the employee the risk of extinguishing an unknown claim. In the language of Hydradry, a

>pervasive release is a "side deal" [ ] in which the employer extracts a gratuitous (although usually valueless) release of all claims in exchange for money unconditionally owed to the employee. (If an employee signs a pervasive release as part of a "side deal" and later discovers a valuable but released claim, the employee perhaps looks for compensation from the attorney who advise the employee to grant the release.) Although inconsequential in the typical civil case (for which settlement requires no judicial review), an employer is not entitled to use an FLSA claim (a matter arising from the employer's failing to comply with the FLSA) to leverage a release from liability unconnected to the FLSA.

"'Put simply, in order to be compensated consistent with the FLSA, an employee cannot be compelled to surrender other rights, for doing so undermines the fundamental mandatory nature of the minimum wage and overtime protections of the Act by enabling an employer to extract a price for simply doing what the Act requires[ ]' Briggins v. Elwood TRI, Inc., 3 F.Supp.3d 1277, 1289 (N.D. Ala. 2014)." Lee v. Guyoungtech USA, Inc., 247 F.Supp.3d 1257, 1263-1264 (S.D. Ala. Mar. 23, 2017).

A more appropriate release would narrow the scope of release, for instance, to "any and all charges, claims, damages, causes of action or lawsuits of the claims specifically pled in this civil action under the FLSA, 29 U.S.C. § 201 et seq., and all claims for damages or attorneys' fees based on any such claims, arising out of, or pertaining in any way to" Plaintiffs' actions against Defendant, up to the date of Plaintiffs signing this agreement. Harris v. Waste Serv. of Ala, LLC, 2017 WL 6498146, *3 (N.D. Ala. Dec. 19, 2017).

Second, the proposed Settlement Agreement and Release states that Plaintiff "[a]grees to INDEMNIFY (for a damages of every kind as well as fees and costs of litigation), DEFEND AND HOLD HARMLESS Released Parties in the event Plaintiffs or anyone on Plaintiffs' behalf brings, continues, or *pursues any claim, action, or cause of action in violation of any subpart* of this Agreement." (Doc. 34-1, subpart 1(e)) (emphasis added). Further, the proposed waiver and release, releases the Defendant from liability for "every federal, state, and local statutory or common law

theory under which a suit or action can be brought" by the Plaintiffs. (Doc. 34-1, subpart 1(a)). As discussed *supra*, it is improper for a defendant to use an FLSA claim to "leverage a release from liability unconnected to the FLSA." Moreno, 729 F. Supp. 2d at 1351. As such, this type of provision is disfavored.

Third, the settlement contains contradictory terms regarding when payments shall be made and when obligations are satisfied. (Doc. 34-1 at 3 at ¶2-4)). Namely, Paragraphs 2-3 provides that after approval of the settlement and within 14 days of the issuance of a Court order on same, the released parties will pay Plaintiffs and their attorneys the sum of $220,290.14, as well as backpay. Paragraph 3 provides for a separate additional future (continuing) payment: "Defendant will continue to prospectively compensate Plaintiffs with the Canine Care Pay as part of their regular pay." However, Paragraph 4 states that "Plaintiffs understand that Plaintiffs have received all payments due of every kind, and every other obligation that Released Parties otherwise would have to Plaintiffs once Plaintiffs have received the payments due **under paragraph 2**..." (Doc. 34-1 at 3 at ¶4 (emphasis added)). Given that the settlement terms in Paragraph 3 provide for continuing and future payments - yet Paragraph 4's lack of reference to, or acknowledgement of, same -- Paragraph 4 appears contradictory.

For these reasons, the Court cannot approve the parties' proposed settlement at this time.

### IV.     Attorneys' Fees & Costs

The parties' proposed settlement provides that Plaintiffs shall receive $220,290.14, of which counsel will be paid $32,500 in attorneys' fees.[1] (Docs. 34 at 5; 34-1 at 3). In support, counsel has submitted invoices for the time spent working on this matter on behalf of the Plaintiffs. (Doc. 34-2). Additionally, per the parties: "The ... agreed-upon fees will provide Plaintiffs complete

---

[1] The settlement agreement does not provide for any costs.

9

recovery on their wages with no diminution or offset from the agreed-upon fees[]" and "[i]n this settlement resolution, there is no diminution of Plaintiffs' recovery attributable to the agreed-upon attorneys' fees." (Doc. 34 at 7-8).

The FLSA provides that "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). In that regard, the "FLSA requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement. FLSA provides for reasonable attorney's fees; the parties cannot contract in derogation of FLSA's provisions." Silva v. Miller, 307 Fed. Appx. 349, 351 (11th Cir. 2009). See also Czopek v. Tbc Retail Group., Inc., 2016 WL 7116112, *5 (M.D. Fla. Nov. 7, 2016), Report and Recommendation *adopted by* 2016 WL 7104187 (M.D. Fla. Dec. 6, 2016) (same). Courts thus consider whether the fees were negotiated separately and apart from a plaintiff's settlement of the FLSA claims. Wing v. Plann B Corp., 2012 WL 4746258, *4 (M.D. Fla. Sept. 17, 2012) Report and Recommendation *adopted by* 2012 WL 4746190 (M.D. Fla. Oct. 4, 2012) (where there is a reasonable basis for compromise and "Plaintiff's claims were resolved separately and apart from the issue of attorneys' fees…there is no reason to believe that Plaintiff's recovery was adversely affected by the amount of fees and costs to be paid to Plaintiff's counsel").

Additionally, "[i]n scrutinizing the reasonableness of an FLSA attorney's fee award, courts have utilized the time-honored lodestar method." Longcrier v. HL-A Co., Inc., 2009 WL 971297 *1, (S.D. Ala. Apr. 8, 2009); see also Padurjan v. Aventura Limousine & Transp. Service, Inc., 441 Fed. Appx. 684, 686, (11th Cir. 2011) ("To calculate reasonable attorneys' fees, courts are to consider the number of hours reasonably expended on the litigation, together with the customary

hourly rate for similar legal services. These amounts are multiplied together to determine the so-called 'lodestar'" which may then be adjusted "as necessary in the particular case.") (citations omitted). "Adjustments to that fee then may be made as necessary in the particular case." Blum v. Stenson, 465 U.S. 886, 888 (1984). Consequently, the parties are expected to provide the Court with sufficient documentation so that it may utilize the lodestar method.

Upon consideration, the Court is unable to consider the request for attorneys' fees and costs at this time. The parties represent that the fees and costs provide Plaintiffs complete recovery without any diminution so there is no reason for the Court to believe Plaintiffs' recovery was adversely affected. The parties also submitted billing records of Plaintiffs' counsel Thomas M. Loper ("Loper"). (Doc. 34-2). However, there are no specified costs total sought, only reference to a one-time $402 filing fee. Any costs that counsel seeks to recover should be supported with invoices, billing statements, etc.[2] Additionally, the parties reference a Declaration of Loper in "Ex. B" but no such Declaration was submitted to the Court. And the information set forth within the motion to approve (Doc. 34 at 9), if intended as some form of embedded declaration, is insufficient. For example, Loper states summarily that "[h]e has significant experience in the representation of employees and labor organizations[]" which provides little information to the Court about his experience and qualifications. Moreover, Loper has provided no information with regard to his billing rate. Further, there is no information information as to whether his billing rate is reasonable

---

[2] The party seeking costs must submit a request that enables the court to determine entitlement to same. Zainulabeddin v. Univ. of South Fla. Bd. of Trustees, 749 Fed. Appx. 776, 787 (11th Cir. 2018) (citing Loranger, 10 F.3d at 784). Cf. Boyer v. Flagship Auto. Ctr., LLC, 2013 WL 2467778, *7 (M.D. Fla. Jun. 7, 2013) ("Plaintiff failed to attach any documents ... The only cost the Court can verify without additional documentation is the filing fee.... the Court will.... not tax any of the other listed costs[ ]"). See also generally Ford v. Navika Capital Grp., LLC, 2017 WL 1381668 (S.D. Ala. Apr. 17, 2017); Bumpers v. Austal U.S.A., L.L.C., 2015 WL 6870122 (S.D. Ala. Nov. 6, 2015).

in the relevant legal community (Mobile, Alabama). Finally, a brief review of the billing records indicates billing hours which may not be recoverable (e.g., telephone calls, reviewing court filings, correspondence, etc.).[3]

---

[3] Regardless of who is doing the billing, courts may only award fees for time spent by attorneys *to the extent they perform work "traditionally done by an attorney[ ]"* -- i.e., no fees for overhead (secretarial/administrative tasks). See, e.g., Missouri v. Jenkins, 491 U.S. 274, 288 at note 10 (1989) ("purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them[ ]"); Vanderbilt Mortg. and Fin., Inc. v. Crosby, 2015 WL 5178719, *2 (S.D. Ala. Sept. 54, 2015) ("excessive, redundant, or otherwise unnecessary" fees are not recoverable); SE Prop. Holdings, LLC v. 145, LLC, 2012 WL 6681784, *4-5 (S.D. Ala. Dec. 21, 2012) (allowing recovery of traditional attorney-work but not clerical work). See also Brown v. Lambert's Cafe III, 2016 WL 325131, *6, n. 4 (S.D. Ala. Jan. 27, 2016) (clerical tasks are not recoverable). "Courts in this district generally consider tasks such as mailing and telefaxing correspondence, making routine calls to clients, obtaining pleadings from the court's database and printing documents as secretarial functions." Cormier v. ACAC Inc., 2013 WL 6499703, *5 (S.D. Ala. Dec. 11, 2013). See also Whitney Bank v. Davis–Jeffries–Hunold, Inc., 2012 WL 5470131, *7 (S.D. Ala. Nov. 9, 2012) (time spent by paralegals "receiving, reviewing, and indexing documents," "sending or receiving emails with documents attached," "preparing the civil cover sheet and summons," "receiving and indexing certified mail receipts," and "e-filing documents with the Court and receiving and indexing those documents" was not compensable time for the purposes of the fee petition); Johnson v. TMI Mgmt.Sys., Inc., 2012 WL 4435304, *5 (S.D. Ala. Sept. 26, 2012) (finding "telephone call to client re: scheduling appointment," "receipt and download of order," and "review of the Court's Order ..." non-compensable). As detailed in Ford v. Navika Capital Grp., LLC, 2017 WL 1381668, *3-4 (S.D. Ala. Apr. 17, 2017) (internal citations omitted):

> Such non-recoverable tasks include time billed for: setup of a file, calendaring deadlines, receiving, reviewing, and indexing documents, sending or receiving emails with documents attached, preparing civil cover sheets and summons, receiving and indexing certified mail receipts, e-filing documents with the Court, receiving and indexing those documents, mailing and telefaxing correspondence, making calls to clients, obtaining pleadings from the court's database, printing documents, miscellaneous scanning of documents, etc ... [FN4] ...
>
> [FN4].... (clerical tasks such as "Review Summons Issued," "Call to Clerk to confirm Summons were sent to Marshall for service," "Download/Combine and OCR Transcript, live bookmark," and "Download, file and save Corrected transcript in parts," are not compensable as attorney fees); .... (downloading, scanning or saving files or docket entries are not recoverable); ..... (an attorney in an FLSA case should not be permitted to recover fees for clerical time for e-filing, on line research of addresses, preparing civil cover sheets and summonses and for reviewing the CM/ECF email for documents prepared and filed by counsel).

... The billing records include numerous entries for such tasks (.... "receive settlement agreement and W9 form signed from client: scan to file and save," .... "re-scan settlement agreements into S drive for clients", ... "further preparation of documents for client correspondence", ... "conference with counsel regarding strategy on service affidavits," ... "compilation of correspondence and pleadings regarding all parties in lawsuit," ... "analysis of scheduling order/docket .." .... "save supplemental report regarding settlement to S drive," "Operation of Spreadsheet ...", etc. .... The non-recoverability for clerical tasks may also be applicable to those entries labeled "Assistance with...." ....

## V.     Conclusion

Accordingly, it is **ORDERED** that the parties' Joint Motion for Approval of Fair Labor Standards Act Settlement (Doc. 34) is **DENIED**. It is further **ORDERED** that on or before **June 23, 2023**, the parties shall jointly file: 1) a new motion and new FLSA settlement agreement which cures the foregoing deficiencies; 2) the necessary assertions and documentary support for the requested attorneys' fees and costs; and 3) clarification or explanation as to any other matters noted *supra*.

**DONE** and **ORDERED** this the **1st** day of **June 2023.**

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**